IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MARIANO MALDONADO PAGAN.;**
Plaintiff

v.

**CORRECTIONAL HEALTH SERVICES CORP., ET. AL.;**
Defendants

Civil No. 16-1173 (DRD)

## OPINION AND ORDER

On August 5, 2016 Mariano Maldonado Pagan ("Plaintiff"), an inmate at the Guyama Correctional Complex, filed an *Amended Complaint and Request for Summary Judgement*. *See* Dkt. No. 28. Plaintiff alleges that he was subjected to cruel and unusual punishment and that he was the victim of malpractice at the hands of several treating physicians. *See* Dkt. No. 28; *see also* Dkt. No. 46. On November 9, 2016, Plaintiff filed *Petition for Preliminary Injunction and Motion in Opposition to the Statement Under Penalty of Perjury*. *See* Dkt. No. 46. Plaintiff asserts that the treating physicians coordinated to defraud the Correctional Health Service Crop ("CHSC") and that he has suffered and continues to be affected as a result. Plaintiff outlines that his treating physician purposefully failed to order him to suspend the consumption of Plavix prior to the performance of a colonoscopy. Consequentially, Plaintiff's polyps were unable to be removed and a second colonoscopy (yet to be performed) was required for the removal at a later date. Plaintiff seeks a court order for the extraction of the polyps with a gastroenterologist outside of the CHSC system and that the overnight preparation for said procedure occurs within his own cell, as opposed to an emergency room. *See* Dkt. No. 46. Pending before the court is Plaintiff's *pro se Petition for Preliminary Injunction and Motion in Opposition to the Statement Under Penalty of Perjury*. *See* Dkt. No. 46. For the reasons provided bellow, Plaintiff's motion is hereby **DENIED**.

## I.   FACTUAL AND PROCEDURAL HISTORY

In early 2014, Plaintiff began experiencing abdominal pain. Dr. Robert Muns ("Dr. Muns") ordered a colonoscopy be performed. On March 25, 2014, via Dr. Muns' referral, Plaintiff attended an appointment with gastroenterologist Dr. Fernando Ramos-Mercado ("Dr. Ramos-Mercado") from the Instituto de Gastroenterologia de Puerto Rico S.R.L. ("Instituto") in Clinica las Americas. During the appointment, Dr. Ramos-Mercado questioned Plaintiff about any medications he was taking. *See* Dkt. No. 28 pg. 1-2. Plaintiff informed Dr. Ramos-Mercado that he was prescribed Plavix[1]. Dr. Ramos-Mercado ordered a colonoscopy be performed on May 7, 2014, and that Plaintiff consume a liquid diet, and laxatives the day prior. Plaintiff alleges that Dr. Ramos-Mercado made no comment regarding his use of Plavix and did not inform Plaintiff to suspend his use of Plavix; suspension of Plavix is recommended approximately ten days prior to the procedure. *See* Dkt. No. 28 pg. 2. Prior to the procedure taking place, Plaintiff allegedly informed Dr. Ramos-Mercado a second time of his use of Plavix. Dr. Ramos-Mercado purposefully performed the colonoscopy without addressing the Plavix issue. Plaintiff asserts that Dr. Muns stated that all was well with the colonoscopy. Plaintiff, upon request, was provided a copy of the colonoscopy report. *See* Dkt. No. 28 pg. 3. The report stated that Dr. Ramos-Mercado had discovered sessile polyps, which had not been removed due to Plaintiff's use of Plavix. *See* Dkt. No. 3 Exhibit-6a. Within the report, Dr. Ramos-Mercado recommended that the colonoscopy be repeated "with better PREP (using a Peds colonoscope)." *See* Dkt. No 3 Exhibit-6a.

On March 5, 2015, Plaintiff filed a grievance (GMA.1000-351-15) protesting the fact he had not yet received a second colonoscopy. *See* Dkt. No. 28 pg. 4; *see also* Dkt. No. 3. Plaintiff's grievance was dismissed. *See* Dkt. No. 28 pg. 4. On April 27, 2015, Plaintiff filed a second grievance (GMA 1000-458-15) in which he

---

[1] Plavix, generic name clopidogrel bisulfate, is a prescription medication used for the treatment of poor circulation, treatment of chest pain due to heart problems, or for individuals who has suffered from a heart attack and/or a stroke. Plavix is a blood thinner which reduces the chance of blood clots forming. Plavix increases the risk of bleeding and makes it longer for bleeding to stop. *See* Bristol-Myers Squibb & Sanofi Pharmaceuticals Partnership, *Medication Guide Plavix (PLAV-iks)(Clopidogrel Bisulfate) tablets*, U.S. Food and Drug Administration Approved Medication Guide (September 2016), https://www.fda.gov/downloads/drugs/drugsafety/ucm243349.pdf.

expressed his opposition to being treated by Dr. Ramos-Mercado. *See* Dkt. No. 28 pg. 4; *see also* Dkt. No. 3 (Exhibit 3). Within the grievance, Plaintiff objected to the treatment he received at the hands of Dr. Ramos-Mercado and his staff, which Plaintiff contends constituted cruel and unusual punishment. *See* Dkt. No. 28 pg. 7. Plaintiff received a response to the second grievance that simply stated that the CHSC had a contract with the Instituto to provide gastroenterology services.

On July 22, 2015, Plaintiff was again scheduled for an appointment with Dr. Ramos-Mercado. Plaintiff refused to attend. *See* Dkt. No. 28 pg. 7. On September 27, 2016, Plaintiff was scheduled for a colonoscopy to be performed by Dr. Rodriguez, a physician outside the CHSC system. *See* Dkt. No. 46 pg. 4. Plaintiff was to stop the consumption of Plavix on September 20, 2015, seven days prior to the colonoscopy. Plaintiff contends that he was not informed of neither the colonoscopy date nor the date upon which he was to stop taking Plavix. Dr. Negron-Vera, the director of clinical services at the Guyama Correctional Complex for CHSC (Dkt. No. 1), rebuts this fact and states that CHSC personnel had informed Plaintiff as to the date of the colonoscopy on September 15, 2016. Dr. Negron-Vera also asserts that Plaintiff was informed that he would have to stay in the emergency ward the night prior to the procedure for preparation. *See* Dkt. No. 1. Plaintiff refused to submit himself to the second colonoscopy. Plaintiff states that as he was unaware of the colonoscopy date and the date in which he was to stop taking Plavix, he was unable to submit to the procedure as he had ingested Plavix within the seven days prior to the scheduled colonoscopy. Furthermore, Plaintiff alleges that the conditions to which he would have to submit himself to, an overnight stay in the emergency room, would constitute cruel and unusual punishment. *See* Dkt. No. 46 pg. 8.

Plaintiff alleges that he is still in pain and that this was a foreseeable result of Dr. Ramos-Mercado's omission to inform Plaintiff to suspend Plavix prior to the colonoscopy. *See* Dkt. No. 28 pg. 10. Plaintiff maintains that Dr. Ramos-Mercado intentionally omitted to inform him to suspend Plavix ten days prior to the colonoscopy as a means to defraud the CHSC into paying for the procedure twice. *See* Dkt. No.

28 pg. 3-4. Plaintiff further states that Dr. Muns and CHSC declined to repeat the colonoscopy to save the CHSC money and to shield Dr. Ramos-Mercado from a potential legal suit. *See* Dkt. No. 28 pg. 5. Plaintiff seeks that the court orders the extraction of the polyps with a different gastroenterologist and that the overnight preparation be within his own cell. *See* Dkt. No. 46 pg. 13

## II.   PRELIMINARY INJUNCTION STANDARD

"To obtain a preliminary injunction, a plaintiff 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Bruns v. Mayhew*, 750 F.3d 61, 65 (1st Cir. 2014)(quoting *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)); *see also Mercado-Salinas v. Bart Enterprises Int'l, Ltd.*, 671 F.3d 12, 19 (1st Cir. 2011)(the Court "must consider (1) the likelihood of the movant's success on the merits; (2) the anticipated incidence of irreparable harm if the injunction is denied; (3) the balance of relevant equities (i.e., the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue); and (4) the impact, if any, of the court's action on the public interest."). "The first two factors [, likelihood of success on the merits and irreparable harm,] are the most important and, in most cases, 'irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief.'" *Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009)(quoting *Charlesbank Equity Fund II v. Blinds To Go, Inc.,* 370 F.3d 151, 162 (1st Cir.2004)). With these principles in mind, the Court discusses these factors *seriatim*.

### III.   ANALYSIS

Prior to conducting the analysis it is important to note that Plaintiff is representing himself *pro se*. Handwritten *pro se* documents are held to "less stringent standards than formal pleadings drafted by lawyers." *See Estelle v. Gamble*, 429 U.S. 97 (1976); *see also Haines v. Kerner*, 404 U.S. 519 (1972).

### Likelihood of Success on the Merits

"The *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm. Wireless Services, Inc. v. SprintCom. Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) (internal citations omitted).

**Conspiracy to Defraud**

Plaintiff alleges that Dr. Ramos-Mercado intentionally failed to inform him to suspend his Plavix use as a means to defraud CHSC. Somewhat confusingly, Plaintiff further states that Dr. Muns and CHSC declined to repeat the colonoscopy to save the CHSC money and to shield Dr. Ramos-Mercado from a potential legal suit as part of said conspiracy. *See* Dkt. No. 28 pg. 5. In the fact pattern presented by the Plaintiff, it would appear that CHSC was both the victim and participant in a conspiracy to defraud. CHSC is an agency of the United States; as such the applicable standard for a conspiracy to defraud would require that three elements be present: (1) that an agreement is present, (2) the objective of said agreement is unlawful, and (3) an overt act is committed in furtherance of the agreement. *See United States v. Mubayyid*, 658 F.3d 35, 52 (1st Cir. 2011).  According to Plaintiff, the agreement was for Dr. Ramos-Mercado to intentionally omit the potential consequences of taking Plavix prior to the colonoscopy. The motivation being that if he was to discover polyps he would be unable to remove them (due to a risk of bleeding that can occur during such a procedure when taking Plavix). Dr. Ramos-Mercado would then have to repeat the procedure in order to safely remove the polyps. Dr. Ramos-Mercado would then receive two payments for two separate procedures. Plaintiff appears to allege that the removal of his polyps could have occurred at

the first colonoscopy. Plaintiff then alleges that the delay of the second colonoscopy was a direct result of Dr. Muns, Dr. Ramos-Mercado, and CHCS attempt to shield Dr. Ramos-Mercado from a legal suit and to spare CHCS from the cost of the second colonoscopy. Such facts are contradictory as Plaintiff is alleging that Dr. Ramos-Mercado both conspired against and with CHSC.

In spite of this confusion, and regardless of how liberally the court attempts interpret the alleged facts in favor of the Plaintiff, in applying the standard of conspiracy to commit fraud to the convoluted accusation above the Court can not conclude that a conspiracy to defraud is present. Plaintiff offers no evidence, neither concrete nor circumstantial, as to an agreement. Plaintiff merely speculates that there is an unspoken agreement between the three parties. Without offering any evidence or more substantial facts Plaintiff's speculations are not enough. *See Wayne Invest., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir. 1984) ("Allegations based on 'information and belief' do not satisfy the particularity requirement unless the complaint sets forth the facts on which the belief is founded."). Plaintiff has not proffered enough substantial evidence to allege a conspiracy claim beyond his gut feeling. As such, Plaintiff is unlikely to succeed on the claim of conspiracy to defraud against Dr. Ramos-Mercado, Dr. Muns, and CHSC.

**Cruel and Unusual Punishment**

Plaintiff contends that the treatment received at the hands of CHSC and his treating Physicians constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution. In order for an individual to succeed under an Eighth Amendment claim, they must demonstrate that the conditions under which they were placed were under created (1) a substantial risk of serious harm, and (2) the unnecessary and wanton infliction of pain. *Farmer v. Brennan* 511 U.S. 825 (1994). The standard requires that a prison official have a 'sufficiently culpable state of mind;' or deliberate indifference to an inmate's health. *Id* at 834. In applying the Eighth Amendment to the case at hand, there are two potential standards to be applied to CHSC and Plaintiff's treating officials. One can raise a claim alleging a violation occurred due to the prison official's intentional conduct or as a result of their deliberate indifference. *See*

*Calderon-Ortiz v. Laboy-Alvarado*, 300 F.3d 60, 63 (2002). It is unclear which standard the Plaintiff is pleading under. However, the court finds that despite which standard is applied the Plaintiff has not sufficiently pled a cruel and unusual punishment claim as the risk of receiving a colonoscopy with a CHSC physician and the emergency room preparation does not appear sufficiently dangerous and did not constitute an unnecessary and wanton infliction of pain.

The question before the court is whether the failure to inform Plaintiff to suspend Plavix prior to the colonoscopy and the subsequent delay of the second colonoscopy, which has yet to occur due to several delays, constitutes a substantial risk of serious harm. For the purpose of an Eighth Amendment claim:

> "…the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities,' … the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. . . ."

See *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)(internal citations omitted). While the Court may agree with Plaintiff that the delay of the second colonoscopy may be a nuisance, and while Plaintiff still is experiencing pain due to the polyps, this does not reach the level of a substantial risk of harm or constitute a denial of the minimal civilized measure of life's necessities. Furthermore, Plaintiff alleges that the overnight stay in the cold emergency room the night prior to the colonoscopy for preparation would constitute cruel and unusual punishment. An overnight stay in an emergency room in preparation for a medical procedure, while uncomfortable and cold, is by no means cruel and unusual punishment under the standard expressed above. The court finds it difficult to interpret a routine preparation for a routine procedure as cruel and unusual punishment.  While polyps may potentially develop into cancer this is, more so than not, not the case. As such, the delay in the removal of Plaintiff's polyps, either intentionally or negligently, would not be enough to satisfy the significant risk standard applicable to an Eighth Amendment

claim[2]. Rather such a claim might be more appropriately plead as medical malpractice. Accordingly, Plaintiff is unlikely to succeed on a claim of cruel and unusual punishment.

**Medical Malpractice**

Medical Malpractice in Puerto Rico requires three elements be present: (1) the duty owed, (2) and act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm. *See Rosa-Rivera v. Dorado Helath, Inc.,* 787 F.3d 614 (1st Cir. 2015). In the case at hand, it may be arguable that there was a duty owed to inform Plaintiff to suspend the use of Plavix, and that said duty was violated by Dr. Ramos-Mercado's failure to inform. However Plaintiff fails the third prong as he does not appropriately establish a causal nexus between the breach and the harm (his continued pain). The causal relationship between the failure to inform Plaintiff to suspend Plavix and the chronic pain, which he continues to suffer from, has not been demonstrated. Proof of causation requires a showing that "it is more probable than not" that the harm was as a result of the physician's negligence. *See Mitchell v. United States*, 141 F.3d 8 (1st Cir. 1998). Plaintiff has failed to establish such causation. Most importantly, however, the Court is doubtful as to whether it has jurisdiction over Plaintiff's malpractice claim, as he and Defendants are both domiciled in Puerto Rico. *See* 28 U.S.C.A. §1332.

**Irreparable Harm**

Taking the complaint in the light most favorable to the Plaintiff and applying a less stringent standard the court finds that it is unlikely that Plaintiff would succeed on the merits of his complaint as it currently stands. Furthermore, there does not appear to be an irreparable harm that Plaintiff will face if this injunction is denied. The First Circuit has found irreparable harm is present when there is no other adequate source of relief available. *See In re Bulger*, 710 F.3d 42, 45 (1st Cir. 2013). CHSC has not denied

---

[2] The Supreme Court has ruled that the inadvertent failure to provide adequate medical care does not constitute an unnecessary and wanton infliction of pain. *See Estelle v. Gamble*, 429 U.S. 97 (1976).

Plaintiff a colonoscopy but merely not agreed to all of Plaintiff's requests in relation to medical treatment.[3] At most, CHSC and Plaintiff's treating physicians may have been negligent in not informing Plaintiff to suspend his use of Plavix prior to the Colonoscopy. However, that alone does not constitute medical malpractice or an irreparable harm. Plaintiff has failed to demonstrate an irreparable harm that will befall him if the preliminary injunction is denied.

## Balance of Equities and Public Interest

Generally, injunctions that order a party to carry out a particular action are disfavored as "preliminary injunctions are [typically] permissible only 'to preserve the *status quo*.'" *Braintree Labs., Inc. v. Citigroup Glob. Markets Inc.*, 622 F.3d 36, 40–41 (1st Cir. 2010). These injunctions, referred to as "mandatory injunctions," alter the state of affairs and require the non-moving party to act. *Id*. However, although it is sometimes essential "to require defendant to disturb the *status quo* by undoing acts completed before the injunction issues, or by acting affirmatively, in order to preserve the power of the court to render a meaningful decision . . . there has been great judicial hesitancy in granting preliminary relief when it is necessary to force defendant to act solely to protect the court's power to render a meaningful decision for either party and the decision would disturb the *status quo*." 11A Wright, Miller, and Kane, Fed. Prac. & Proc. § 2948 (2016); *but see Cohen v. Brown Univ.*, 991 F.2d 888, 906 (1st Cir. 1993)("the district court has broad discretionary power to take provisional steps restoring the status quo pending the conclusion of a trial.")(internal citations omitted). As Plaintiff is seeking what essentially constitutes a mandatory injunction the Court must address whether altering the *status quo* would be unduly burdensome to one party.

In balancing the relevant equities the Court finds that the potential hardship that CHSC would face, if the preliminary injunction is granted, in contrast to the low risk of irrepreble harm Plaintiff may face, is too great. It would be problematic both to CHSC and against public interest to establish precedent that would

---

[3] Had CHSC fully denied Plaintiff access to medical treatment or a colonoscopy this determination might be different.

essentially allow any inmate to file for a preliminary injunction each time they may not be entirely content with their treating physician; particularly when there is no imminent harm to their health. Permitting such an action would overwhelm the courts and could lead to unnecessary litigation and costs. As Plaintiff is unlikely to succeed of the likelihood of the merits and has not demonstrated to the court any irrepreble harm that may befall him, his preliminary injunction has failed to meet the legal standard required. The Court cannot grant Plaintiff's *Petition for Preliminary Injunction and Motion in Opposition to the Statement Under Penalty of Perjury*. Plaintiff's motion is hereby **DENIED**.

## IV.   CONCLUSION

Plaintiff has failed to demonstrate a likelihood of success in relation to his claim of conspiracy to commit fraud, cruel and unusual punishment, and medical malpractice. Furthermore there is no showing of irreparable harm that the Plaintiff will suffer. Due to the aforementioned reasons Plaintiff's *Petition for Preliminary Injunction and Motion in Opposition to the Statement Under Penalty of Perjury* (Dkt. No. 46) is **DENIED**.

The Court stresses, however, that Plaintiff's situation may worsen if the colonoscopy subject of this action is not performed forthwith. Although the Court found Plaintiff's pleadings fell short of properly alleging cruel and usual punishment, there is no doubt that Plaintiff's situation may reach this threshold if proper medical treatment is not provided in a timely manner. **Accordingly, Defendants are to show cause in the next ten (10) days regarding when and where Plaintiff will receive the necessary treatment for his polyps and when and where Plaintiff is scheduled to have his colonoscopy performed.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of May, 2017.

*/S/ Daniel R. Domínguez*
DANIEL R. DOMÍNGUEZ
United States District Judge