# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**MARIANO MALDONADO PAGAN,**

Plaintiff

v.

**CORRECTIONAL HEALTH SERVICES CORP., ET. AL.;**

Defendants

**Civil No.** 16-1173 (DRD)

**OPINION AND ORDER**

On August 5, 2016 Mariano Maldonado Pagan ("Plaintiff"), an inmate at the Guayama Correctional Complex, filed an *Amended Complaint and Request for Summary Judgment*. *See* Dkt. No. 28. Plaintiff alleges that he was subjected to cruel and unusual punishment and that he was the victim of malpractice at the hands of several treating physicians. *See* Dkt. No. 28; *see also* Dkt. No. 46. Subsequently, on November 9, 2016, Plaintiff filed *Petition for Preliminary Injunction and Motion in Opposition to the Statement Under Penalty of Perjury*. *See* Dkt. No. 46. Plaintiff asserted that the treating physicians coordinated to defraud the Correctional Health Service Crop ("CHSC") and that he has suffered and continues to be affected as a result. Plaintiff outlines that his treating physician purposefully failed to order him to suspend the consumption of Plavix prior to the performance of a colonoscopy. Consequentially, Plaintiff's polyps were unable to be removed and a second colonoscopy was required for the removal at a later date.

On May 12, 2017, this Court denied Plaintiff's *Motion for Preliminary Injunction* as he failed to demonstrate a likelihood of success in relation to his claim of conspiracy to commit fraud, cruel and unusual punishment, and medical malpractice. *See* Dkt. No. 66.

Furthermore, this Court found there was no showing of irreparable harm that the Plaintiff will suffer. *Id.* This Court, however, stressed that the Plaintiff's situation may worsen if the colonoscopy subject of this action was not performed, and for this reason, the Court ordered Defendants to show cause in ten (10) days regarding when and where Plaintiff will receive the necessary treatment for his polyps and when the scheduled colonoscopy will be performed. *Id.* On May 30, 2017, CHSC complied with the Court's order and informed that a colonoscopy was scheduled for June 29, 2017 at the Instituto de Gastroenterologia de Puerto Rico S.R.L. ("Instituto") in Clinica las Americas. *See* Dkt. 74, at ¶6. This, despite de fact that the Plaintiff had previously refused three different times to submit himself to scheduled colonoscopies. *See* Dkt. 87, Exhibit 1.

Subsequently, on May 18, 2017, Defendant Dr. Fernando Ramos-Mercado ("Dr. Ramos-Mercado") filed a *Motion to Dismiss* pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. 69. Dr. Ramos-Mercado argues that the Plaintiff requests CHSC to assign him a gastroenterologist at a different hospital in order to perform the colonoscopy, but that he has no authority in law to assign another gastroenterologist to the Plaintiff. *Id.* For this reason, Dr. Ramos-Mercado argues the Complaint fails to allege sufficient facts to support a claim capable to be entitled to relief. *Id.* Likewise, on June 12, 2017, Defendants CHSC and Dr. Edwin Negrón Vera filed a *Motion to Dismiss*. Dkt. 86. The Defendants argue that the Plaintiff has failed to establish a medical malpractice case, as well as a claim of conspiracy to commit fraud and cruel and unusual punishment. *See* Dkt. 95. For the reasons set forth below, the Court **GRANTS** booth pending Motions to Dismiss at Dkts. Nos. 69 and 86.

# I. FACTUAL AND PROCEDURAL HISTORY

The Court already stated the factual and procedural history for this case in its previous Opinion and Order relating to Plaintiff's *Motion for Preliminary Injunction*. *See* Dkt. No. 66. Nonetheless, for the sake of adjudicating the pending motions to dismiss, the Court will once again outline and update the factual history of this case.

In early 2014, Plaintiff began experiencing abdominal pain. Dr. Robert Muns ("Dr. Muns") ordered a colonoscopy be performed. On March 25, 2014, via Dr. Muns' referral, Plaintiff attended an appointment with gastroenterologist Dr. Ramos-Mercado from the Instituto. During the appointment, Dr. Ramos-Mercado questioned Plaintiff about any medications he was taking. *See* Dkt. No. 28 pg. 1-2. Plaintiff informed Dr. Ramos-Mercado that he was prescribed Plavix.[1] Dr. Ramos-Mercado ordered a colonoscopy be performed on May 7, 2014, and that Plaintiff consume a liquid diet, and laxatives the day prior. Plaintiff alleges that Dr. Ramos-Mercado made no comment regarding his use of Plavix and did not inform Plaintiff to suspend his use of Plavix; suspension of Plavix is recommended approximately ten days prior to the procedure. *See* Dkt. No. 28 pg. 2. Prior to the procedure taking place, Plaintiff allegedly informed Dr. Ramos-Mercado a second time of his use of Plavix. Dr. Ramos-Mercado purposefully performed the colonoscopy without addressing the Plavix issue. Plaintiff asserts that Dr. Muns stated that all was well with the colonoscopy. Plaintiff, upon request, was provided a copy of the colonoscopy report. *See* Dkt. No. 28 pg. 3. The report stated that Dr. Ramos-Mercado had discovered

---

[1] Plavix, generic name clopidogrel bisulfate, is a prescription medication used for the treatment of poor circulation, treatment of chest pain due to heart problems, or for individuals who has suffered from a heart attack and/or a stroke. Plavix is a blood thinner which reduces the chance of blood clots forming. Plavix increases the risk of bleeding and makes it longer for bleeding to stop. *See* Bristol-Myers Squibb & Sanofi Pharmaceuticals Partnership, *Medication Guide Plavix (PLAV-iks)(Clopidogrel Bisulfate) tablets*, U.S. Food and Drug Administration Approved Medication Guide (September 2016), https://www.fda.gov/downloads/drugs/drugsafety/ucm243349.pdf.

sessile polyps, which had not been removed due to Plaintiff's use of Plavix. *See* Dkt. No. 3 Exhibit-6a. Within the report, Dr. Ramos- Mercado recommended that the colonoscopy be repeated "with better PREP (using a Peds colonoscope)." *See* Dkt. No 3 Exhibit-6a.

On March 5, 2015, Plaintiff filed a grievance (GMA.1000-351-15) protesting the fact he had not yet received a second colonoscopy. *See* Dkt. No. 28 pg. 4; *see also* Dkt. No. 3. Plaintiff's grievance was dismissed. *See* Dkt. No. 28 pg. 4. On April 27, 2015, Plaintiff filed a second grievance (GMA 1000-458-15) in which he expressed his opposition to being treated by Dr. Ramos-Mercado. *See* Dkt. No. 28 pg. 4; *see also* Dkt. No. 3 (Exhibit 3). Within the grievance, Plaintiff objected to the treatment he received at the hands of Dr. Ramos-Mercado and his staff, which Plaintiff contends constituted cruel and unusual punishment. *See* Dkt. No. 28 pg. 7. Plaintiff received a response to the second grievance that simply stated that the CHSC had a contract with the Instituto to provide gastroenterology services.

On July 22, 2015, Plaintiff was again scheduled for an appointment with Dr. Ramos-Mercado. Plaintiff refused to attend. *See* Dkt. No. 28 pg. 7. On September 27, 2016, Plaintiff was scheduled for a colonoscopy to be performed by Dr. Rodriguez, a physician outside the CHSC system. *See* Dkt. No. 46 pg. 4. Plaintiff was to stop the consumption of Plavix on September 20, 2015, seven days prior to the colonoscopy. Plaintiff contends that he was not informed of neither the colonoscopy date nor the date upon which he was to stop taking Plavix. Dr. Negron-Vera, the director of clinical services at the Guyama Correctional Complex for CHSC (Dkt. No. 1), rebuts this fact and states that CHSC personnel had informed Plaintiff as to the date of the colonoscopy on September 15, 2016. Dr. Negron-Vera also asserts that Plaintiff was informed that he

4

would have to stay in the emergency ward the night prior to the procedure for preparation. *See* Dkt. No. 1. Plaintiff refused to submit himself to the second colonoscopy. Plaintiff states that as he was unaware of the colonoscopy date and the date in which he was to stop taking Plavix, he was unable to submit to the procedure as he had ingested Plavix within the seven days prior to the scheduled colonoscopy. Furthermore, Plaintiff alleges that the conditions to which he would have to submit himself to, an overnight stay in the emergency room, would constitute cruel and unusual punishment. *See* Dkt. No. 46 pg. 8.

Plaintiff alleges that he is still in pain and that this was a foreseeable result of Dr. Ramos-Mercado's omission to inform Plaintiff to suspend Plavix prior to the colonoscopy. *See* Dkt. No. 28 pg. 10. Plaintiff maintains that Dr. Ramos-Mercado intentionally omitted to inform him to suspend Plavix ten days prior to the colonoscopy as a means to defraud the CHSC into paying for the procedure twice. *See* Dkt. No. 28 pg. 3-4. Plaintiff further states that Dr. Muns and CHSC declined to repeat the colonoscopy to save the CHSC money and to shield Dr. Ramos-Mercado from a potential legal suit. *See* Dkt. No. 28 pg. 5. Plaintiff seeks that the court orders the extraction of the polyps with a different gastroenterologist and that the overnight preparation be within his own cell. *See* Dkt. No. 46 pg. 13.

On May 12, 2017, this Court denied Plaintiff's *Motion for Preliminary Injunction* as he failed to demonstrate a likelihood of success in relation to his claim of conspiracy to commit fraud, cruel and unusual punishment, and medical malpractice. *See* Dkt. No. 66. Furthermore, this Court found there was no showing of irreparable harm that the Plaintiff will suffer. *Id.* This Court, however, stressed that the Plaintiff's situation may worsen if the colonoscopy subject of this action is not performed, and for this reason, the Court ordered

Defendants to show cause in ten (10) days regarding when and where Plaintiff will receive the necessary treatment for his polyps and when the scheduled colonoscopy will be performed. *Id.* On May 30, 2017, CHSC complied with the Court's order and informed that a colonoscopy was scheduled for June 29, 2017. *See* Dkt. 74, at ¶6. This, despite de fact that the Plaintiff had previously refused three different times to submit himself to a colonoscopy as the Plaintiff had assumed the position that until the Federal Court resolved his request for injunctive relief, he did not want the colonoscopy to take place. *See* Dkt. 87, Exhibit 1.

Subsequently, on August 30, 2017, the Defendant filed a *Motion in Compliance with Court Order* informing the Court that the Plaintiff failed to submit himself to the scheduled colonoscopy set for June 29, 2017 based on the following:

> "Last night went to the emergency ward, I lost a Ducohax and when I was leaving, I slipped with a puddle of water and hurt my knee and elbow. Then I had a nightmare regarding the colonoscopy, the liquid diet was not available at the breakfast, which was a subliminal message and therefore I did not submit myself to the procedure."

*See* Dkt. 97 and Exhibit 1.

Pending now before the Court are two Motions to Dismiss filed by Dr. Ramos-Mercado and CHSC. *See* Dkt. 69 and 86. Both Defendants request a dismissal based on the fact that the Plaintiff has failed to state a claim upon which relief can be granted. *Id.*

## II. 12(B)(6) STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff must

"provide the grounds of his entitlement [with] more than labels and conclusions." See Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).')(quoting Twombly, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; see e.g. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 662. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. See Iqbal, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a Bivens claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. Iqbal, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 556 U.S. 678) (quoting Twombly, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." Iqbal, 556 U.S. 679. This second step is

"context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (citing Twombly, 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez, 640 F.3d at 12, (citing Iqbal, 556 U.S. 679); Sanchez v. Pereira-Castillo, 590 F.3d 31, 45 (1st Cir. 2009).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" even if seemingly incredible. Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010) (citing Twombly, 550 U.S. at 556); Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 556 U.S. 679); *see* Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see* Ocasio-Hernandez, 640 F.3d at 12 (citing Twombly, 550 U.S. at 556)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he

make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda-Villarini, 628 F.3d at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See* Massachusetts Delivery Ass'n v. Coakley, 671 F.3d 33, 39 n. 6 (2012)(emphasizing that a primary difference between a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596; *see* Iqbal, 556 U.S. at 681("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see* Mendez Internet Mgmt. Servs. v. Banco Santander de P.R., 621 F.3d 10, 14 (1st Cir. 2010) (The Twombly and Iqbal standards require District Courts to "screen[] out rhetoric masquerading as litigation."). The First Circuit recently outlined two considerations for district courts to note when analyzing a motion to dismiss. García-Catalán v. United States, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough

9

to surpass the standard prescribed under Twombly-Iqbal. *Id.* at 104. Second, district courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." Id. (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.)(internal citations and quotations omitted).

### III. ANALYSIS

Prior to conducting the analysis it is important to note that Plaintiff is representing himself *pro se*. Handwritten *pro se* documents are held to "less stringent standards than formal pleadings drafted by lawyers." *See Estelle v. Gamble*, 429 U.S. 97 (1976); *see also Haines v. Kerner*, 404 U.S. 519 (1972).

#### A. Conspiracy to Defraud

As this Court established in its previous Opinion and Order (Dkt. 66), CHSC is an agency of the United States; as such the applicable standard for a conspiracy to defraud would require that three elements be present: (1) that an agreement is present, (2) the objective of said agreement is unlawful, and (3) an overt act is committed in furtherance of the agreement. *See United States v. Mubayyid,* 658 F.3d 35, 52 (1st Cir. 2011). In his Complaint, the Plaintiff argues that the agreement was for Dr. Ramos-Mercado to intentionally omit the potential consequences of taking Plavix prior to the colonoscopy. The motivation being that if he was to discover polyps he would be unable to remove them (due to a risk of bleeding that can occur during such a procedure when taking Plavix). Dr. Ramos-Mercado would then have to repeat the procedure in order to safely

remove the polyps. Dr. Ramos-Mercado would then receive two payments for two separate procedures. Plaintiff appears to allege that the removal of his polyps could have occurred at the first colonoscopy. Plaintiff then alleges that the delay of the second colonoscopy was a direct result of Dr. Muns, Dr. Ramos-Mercado, and CHCS attempt to shield Dr. Ramos-Mercado from a legal suit and to spare CHCS from the cost of the second colonoscopy.

This Court already concluded that such facts are contradictory as Plaintiff is alleging that Dr. Ramos-Mercado both conspired against and with CHSC. Specifically, Plaintiff alleges that Dr. Ramos-Mercado intentionally failed to inform him to suspend his Plavix use as a means to defraud CHSC and charge twice for the procedure. Conversely, the Plaintiff states that Dr. Muns and CHSC declined to repeat the colonoscopy to save the CHSC money and to shield Dr. Ramos-Mercado from a potential legal suit as part of said conspiracy. *See* Dkt. No. 28 pg. 5. Thus, in adjudicating the Plaintiff's request for preliminary injunction, the Court found that in the Plaintiff's fact pattern appears that CHSC was both the victim and participant in a conspiracy to defraud.

Further, in applying the standard of conspiracy to commit fraud to the facts alleged in the Complaint, the Court cannot conclude that the Plaintiff adequately pleaded a claim for conspiracy to defraud. Plaintiff does not support the alleged facts relating to an agreement with any specific information or evidence. *See* Dkt. 28. Instead, the Plaintiff merely speculates that there was an unspoken agreement between the three parties. *Id.* Without offering any evidence or more substantial information, the Plaintiff's speculations are insufficient. *See Wayne Invest., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir. 1984) ("Allegations based on 'information and belief' do not satisfy the particularity requirement

unless the complaint sets forth the facts on which the belief is founded."). Therefore, the Plaintiff failed to set forth a claim of conspiracy to defraud against Dr. Ramos-Mercado, Dr. Muns, and CHSC.

### B. Cruel and Unusual Punishment

Plaintiff contends in the Complaint that the treatment received at the hands of CHSC and the treating physicians constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution. In order for the Plaintiff to succeed under an Eighth Amendment claim, he must demonstrate that the conditions under which he was placed were under created (1) a substantial risk of serious harm, and (2) the unnecessary and wanton infliction of pain. *Farmer v. Brennan* 511 U.S. 825 (1994). The standard requires that a prison official have a 'sufficiently culpable state of mind;' or deliberate indifference to an inmate's health. *Id* at 834.

In interpreting the Eighth Amendment to the case at hand, there are two potential standards to be applied to CHSC and Plaintiff's treating officials. One can raise a claim alleging a violation occurred due to the prison official's intentional conduct or as a result of their deliberate indifference. *See Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 63 (2002).* Nonetheless, from a simple reading of the Complaint, it is unclear which standard the Plaintiff is pleading under. For this reason, the Court already determined in its previous *Opinion and Order* that the Plaintiff had **not sufficiently pled** a cruel and unusual punishment claim considering the risk of receiving a colonoscopy with a CHSC physician and the emergency room preparation did not appear sufficiently dangerous and did not constitute an unnecessary and wanton infliction of pain. *See* Dkt. 66 at 7.

Further, the Plaintiff's unsupportable conclusion that the "[d]eliberate indifference to the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" is insufficient to survive a motion to dismiss. *See* Dkt. 28 at 9. Accordingly, the Court reiterates that the Plaintiff failed to sufficiently allege a claim of cruel and unusual punishment.

The Court also must consider that the undersigned ordered CHSC to schedule a colonoscopy within ten (10) days after entering its previous *Opinion and Order*, and CHSC effectively scheduled a colonoscopy for June 29, 2017. *See* Dkt. 74, at ¶6. However, the Plaintiff failed to submit himself to the scheduled colonoscopy because he "slipped with a puddle of water and hurt [his] knee and elbow" and he "had a nightmare regarding the colonoscopy". *See* Dkt. 97 and Exhibit 1. As a result, the colonoscopy has not been performed to date because the Plaintiff has been unwilling to submit himself to the procedure. The Court understands that this is a case where the Defendant filed his Complaint requesting the Court to "order the defendant C.H.S.C. to obtain an appointment with a different gastroenterologist at a different hospital for the extirpation of polyps". Dkt. 28 at 10. Nonetheless, when CHSC effectively scheduled a second colonoscopy to remove the polyps, the Plaintiff refused the medical treatment. Dkt. 97, Exhibit 1. As such, the Court finds that the Plaintiff's pain is self-inflicted and the only obstacle preventing the colonoscopy from taking place is the Plaintiff himself.

**C. Medical Malpractice**

Medical Malpractice in Puerto Rico requires three elements be present: (1) the duty owed, (2) and act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm. *See Rosa-Rivera v. Dorado Helath, Inc.,* 787

F.3d 614 (1st Cir. 2015). In the case at hand, the Court already determined it may be arguable that there was a duty owed to inform Plaintiff to suspend the use of Plavix, and that said duty was violated by Dr. Ramos-Mercado's failure to inform. *See* Dkt. 66 at 8. Nonetheless, the Court also found that the Plaintiff failed at the third prong as he did not appropriately establish a causal nexus between the breach and the harm (his continued pain). *Id.* The causal relationship between the failure to inform Plaintiff to suspend Plavix and the chronic pain was not been demonstrated in the Complaint. Proof of causation requires a showing that "it is more probable than not" that the harm was as a result of the physician's negligence. *See Mitchell v. United States*, 141 F.3d 8 (1st Cir. 1998). At most, Plaintiff alleges that "as a result of the defendants' acts and omissions described herein were a proximate cause that [kept] me today with abdominal pain." Dkt. 28 at 10. Plaintiff has failed to establish that the defendant's failure to remove the polyps indeed caused his abdominal pain especially considering he was submitted to the procedure because he was experiencing abdominal beforehand. Therefore, the Court reiterates the Plaintiff also failed to plead sufficiently a claim for medical malpractice.

## IV. CONCLUSION

Taking the complaint in the light most favorable to the Plaintiff, the Court finds that the complaint fails to state a plausible claim for relief in relation to his claim of conspiracy to commit fraud, cruel and unusual punishment, and medical malpractice. Nonetheless, the Court understands the sensitivity related to the Plaintiff's medical condition considering Dr. Ramos-Mercado discovered the Plaintiff has sessile polyps. Thus, the Court encourages the Defendant to schedule another colonoscopy in order for the Plaintiff to receive the necessary treatment for his polyps. Due to the aforementioned reasons,

Dr. Ramos-Mercado's *Motion to Dismiss Pursuant to Rule 12 of the Federal Rules of Civil Procedure* (Dkt. 69), as well as CHSC and Dr. Negron-Vera's *Motion to Dismiss* (Dkt. 86) are both **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of January 2018.

*/S/ Daniel R. Domínguez*
DANIEL R. DOMÍNGUEZ
United States District Judge